UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RANDALL CLARK, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 3:25-cv-302 (SFR) |
| | : | |
| 32 SPORTS INC, MATT LAWRENCE, | : | |
| JAMES LAWRENCE, DUSTIN | : | |
| HIBBERT, DAMON HIBBERT, | : | |
| GROTON POLICE DEPARTMENT, | : | |
| ANDREW COLLINS, AND OFFICER | : | |
| POTTER, | : | |
| | : | |
| *Defendants.* | : | |

## <u>RECOMMENDED RULING</u>

This matter was referred to the undersigned for initial review of the Complaint pursuant

to 28 U.S.C. § 1915. *See* ECF 18. For the reasons below, the undersigned recommends that

plaintiff be permitted to proceed on certain claims in the Complaint, ECF 1, but that other claims

be DISMISSED, some with leave to amend in case plaintiff is able to plead plausible, good-faith

allegations that cure the identified deficiencies. The conclusion section contains a summary

table of the recommendations for ease of reference.

### A.  STANDARD OF REVIEW

Pursuant to § 1915(e), the district court must review in forma pauperis complaints and

dismiss any complaint that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief

may be granted; or (iii) seeks monetary relief against a defendant who is immune from such

relief." 28 U.S.C. § 1915(e)(2)(B). The term "frivolous" in § 1915 applies to "not only the

inarguable legal conclusion, but also the fanciful factual allegation," and courts must dismiss a

claim that "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,

325 (1989).  Separately, to determine whether a complaint fails to state a claim, the court

assesses whether the complaint alleges "enough facts to state a claim to relief that is plausible on

its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

      The court liberally construes pleadings and briefs submitted by self-represented plaintiffs,

"reading such submissions to raise the strongest arguments they suggest."  *McLeod v. Jewish*

*Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017).  If a pro se complaint is dismissed

upon initial review, the court should grant leave to amend "unless the court can rule out any

possibility, however unlikely it might be, that an amended complaint would succeed in stating a

claim."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

## B.  COMPLAINT

      Following is a summary of the essential allegations in the Complaint.  ECF 1.  Plaintiff, a

Massachusetts resident, brings claims against citizens of Connecticut relating to a physical

altercation at a youth flag football event in Groton, Connecticut on May 11, 2024, at which

alcoholic beverages were served.  The event organizers – defendant 32 Sports Inc. and its

owners, defendants Matt Lawrence and James Lawrence – did not arrange for any security

measures/safety protocols or for the presence of medical staff.  Defendant Damon Hibbert, a

minor,[1] became verbally aggressive towards other players, staff and participants after twice

---

[1] The Complaint indicates that Damon Hibbert played football at the event.  Under Connecticut
state law, a minor may be civilly liable for injuries caused by his negligence.  *See Overlock v.
Ruedemann*, 147 Conn. 649, 654 (Conn. 1960) ("A minor is liable for injuries negligently
inflicted by him upon another.").

losing to plaintiff's son's team and was challenging adults to fights.  Despite Damon's behavior, defendants Matt Lawrence, James Lawrence and the staff of 32 Sports Inc. failed to intervene. As plaintiff tried to defuse the situation, defendant Dustin Hibbert – Damon's brother/coach and an employee of 32 Sports Inc. – approached from behind and punched plaintiff in the face. Plaintiff was dazed and disoriented.  While plaintiff searched for his son, the Hibbert brothers followed him, threatened him, punched him, and kicked him.  Damon Hibbert also hit him with a stick.  When Groton police officers arrived, Dustin Hibbert admitted that he assaulted plaintiff but falsely stated it was because plaintiff had pulled out two guns and had fired shots in the park. However, plaintiff did not carry any guns that day, and only had a paintball gun in his car, which he never took out.  Defendant police officers Collins and Potter ordered plaintiff from his car, informed him he had guns and fired shots in the park, and arrested him.  Plaintiff was charged with several felonies, including firearms charges. [2]  In contrast, Dustin Hibbert was charged with second-degree breach of peace and risk of injury to minors, and his case was later dismissed.

Plaintiff alleges that he suffered a concussion and PTSD, and he also alleges general reputational harm.  He asserts tort claims under Connecticut state law and civil rights claims under 42 U.S.C. § 1983.  Plaintiff seeks compensatory and punitive damages, and he also seeks injunctive relief including policy changes in the Groton Police Department and civil rights training for Officers Collins and Potter.

### C.  CLAIMS AGAINST THE GROTON POLICE DEPARTMENT

The Complaint names the Groton Police Department as a defendant to the following claims: defamation (Count Four); malicious prosecution (Counts Five and Eleven); abuse of

---

[2] As of the date of this recommended ruling, those charges remain pending in the Connecticut Superior Court.  *See State v. Clark*, K10K-CR24-0380156-S (Conn. Super. Ct.).

process (Count Six); negligent hiring, training, and supervision (Count Seven); intentional infliction of emotional distress (Count Eight); civil conspiracy to violate rights (Count Nine); and false arrest/imprisonment (Count Ten).  To the extent that plaintiff is alleging deprivation of his civil rights by the Groton Police Department, the claims are not viable because a police department is a sub-unit or agency of the municipal government and not an independent legal entity that is capable of being sued under 42 U.S.C. § 1983.  *See Reed v. Hartford Police Dep't*, No. 3:03-cv-2147 (SRU), 2004 WL 813028, at *2 (D. Conn. Apr. 6, 2004) (collecting cases); *Raymond v. Manchester Police Dep't*, No. 3:24-cv-1098 (VAB), 2024 WL 5010489, at *3 (D. Conn. Dec. 6, 2024) (same).  The same principle precludes a police department from being sued for state common law claims. [3]  *See El v. Spagnolo*, No. UWY-CV22-5030421-S, 2023 WL 1794236, at *2 (Conn. Super. Ct. Feb. 1, 2023) ("The Connecticut General Statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued."); *see also*, *e.g.*, *McDonald v. Stamford Police Dep't*, No. 3:21-cv-723 (KAD), 2022 WL 1471249, at *3 (D. Conn. May 10, 2022) (dismissing federal civil rights claims against police department as well as state common law claims including negligence, malicious prosecution, false arrest, false imprisonment, intentional infliction of emotional distress, and defamation); *Li v. Connecticut*, No. 3:22-cv-996 (VAB), 2022 WL 3347220, at *13-14, *26 (D. Conn. Aug. 11, 2022) (dismissing state and federal claims against police department).

---

[3] In contrast, the Connecticut state courts do entertain claims against police departments under state employment statutes.  *See*, *e.g.*, *Hartford Police Dep't v. Comm'n on Hum. Rts. & Opportunities*, 347 Conn. 241 (2023); *Gaudett v. Bridgeport Police Dep't*, 218 Conn. App. 720 (2023).

Accordingly, the undersigned recommends that all claims against the Groton Police Department be DISMISSED WITHOUT LEAVE TO AMEND.

### D.  CLAIMS AGAINST OTHER DEFENDANTS

Following is a review of the eleven counts in the Complaint as to the other defendants.

#### 1.  Count One – Assault and Battery

Count One states a viable claim of assault and battery against the Hibbert brothers, plausibly alleging that they "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact" (assault) and did cause such contact (battery). *See Walker v. Ellis*, No. 3:24-cv-1269 (VDO), 2024 WL 4382760, at *4 (D. Conn. Oct. 2, 2024) (quotation marks omitted) (describing elements of assault and battery under Connecticut state law).

However, there is no allegation that the other Count One defendants – the Lawrence brothers and 32 Sports Inc. – had any interaction with plaintiff on the date in question, so Count One does not state a claim against them for assault and battery.  Nor does the Complaint plausibly allege the Lawrence brothers and 32 Sports Inc. may be held vicariously liable for the attack by their alleged employee, Dustin Hibbert.  In Connecticut, "in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." *A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 208 (1990).  While plaintiff alleges that Dustin Hibbert was an employee of 32 Sports Inc. and was serving as a coach, there are no allegations that raise a reasonable inference that Hibbert's alleged conduct in committing an assault and battery was within the scope of his employment duties and in furtherance of 32 Sports Inc.'s business. *See, e.g., Girard v. Lincoln Coll. of New England*, 27 F. Supp. 3d 289, 302 (D. Conn. 2014) (record

lacked facts from which it could be concluded that alleged sexual harassment by college instructor was within scope of his employment); *cf. Pelletier v. Bilbiles*, 154 Conn. 544, 548-49 (1967) (employer who instructed employee not to permit horseplay in store could be vicariously liable for physical injuries caused when employee violently removed unruly customer).

The undersigned therefore recommends that Count One (a) be permitted to proceed against Dustin Hibbert and Damon Hibbert, and (b) be DISMISSED with leave to amend as to 32 Sports Inc., Matt Lawrence, and James Lawrence.

### 2.  Count Two – Unfair Trade Practices

Count Two alleges unfair trade practices under Massachusetts law against the Hibbert brothers, Officer Collins, the Lawrence brothers, and 32 Sports Inc.  Plaintiff presumably cited Massachusetts law because he initially filed this action in the District of Massachusetts, before it was transferred to Connecticut based on venue requirements.  But even if Count Two is construed to assert a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, it fails to state a viable claim against any of the cited defendants.

The central provision of CUTPA states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b.  CUTPA defines trade and commerce as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."  *Id.* at § 42-110a(4).

As to the Hibbert brothers, Count Two simply alleges that they intentionally assaulted plaintiff.  ECF 1 at 21.  There are no allegations that such assault occurred in the conduct of trade or commerce as defined by CUTPA.

Similarly, as to Officer Collins, the trade or commerce requirement is not satisfied by the allegation that he interfered with plaintiff's records request. *See* ECF 1 at 21. The disclosure of law enforcement records is governed by the Freedom of Information Act, *see*, *e.g.*, Conn. Gen. Stat. § 1-215, and "[a] municipality's obligation to fulfill a public records request pursuant to Connecticut law clearly does not constitute 'trade or commerce.' On the contrary, that activity serves a purely governmental function." *Parnoff v. Town of Stratford*, 216 Conn. App. 491, 502 (2022).

As to the Lawrence brothers and 32 Sports Inc., plaintiff claims that they negligently "created an unsafe environment" by failing to hire security personnel, create safety zones, or establish procedures to deter violent behavior. ECF 1 at 21. Although this conduct ostensibly did occur in trade or commerce, "[r]un-of-the-mill statutory violations, torts, and contract breaches do not constitute unfair trade practices" under CUTPA. *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 102 (2d Cir. 2019). Accordingly, in CUTPA actions alleging personal injury due to an unsafe environment, courts have examined whether the defendants contributed to the dangerous condition for some commercial benefit. For example, the Superior Court allowed a CUTPA claim to proceed against a motel where the decedent was stabbed to death because the complaint alleged that the defendant motel discouraged security and allowed drug use and other criminal activity in order to attract a particular clientele, which amounted to "more than lack of security or a simple personal injury claim." *Rodriguez v. Star-Inns, LLC*, No. KNL-CV216049373S, 2021 WL 5861246 (Conn. Super. Ct. Nov. 8, 2021); *see also*, *e.g.*, *Medina v. Alfresco Bar & Lounge LLC*, No. HHD-CV246183321S, 2025 WL 1443706, at *1 (Conn. Super. Ct. May 14, 2025) (after default judgment, awarding CUTPA punitive damages against defendant nightclub that charged entry fee to promoted event "with a highly volatile environment

and competition for prizes," including free drinks and giveaways of liquor bottles, after which plaintiffs were beaten by other patrons while bouncers looked on).  In a counterexample, the Superior Court granted a motion to strike a CUTPA claim by a plaintiff who was shot at a nightclub where dangerous incidents were allegedly commonplace.  The court reasoned that "[o]wning and managing a notoriously dangerous establishment is not itself an *unfair* method of competition nor an *unfair* or *deceptive* act or practice," and defendant had not concealed information regarding safety issues or marketed the establishment as safe.  *Vasiliou v. Russian Lady Assocs., LLC*, No. CV116022732S, 2012 WL 593421, at *3 (Conn. Super. Ct. Jan. 25, 2012) (emphasis retained); *see also*, *e.g.*, *Hicks v. Mani Enters., Inc.*, No. CV206109381, 2021 WL 3127111, at *3 (Conn. Super. Ct. June 22, 2021) (granting motion to strike CUTPA claim alleging that plaintiff suffered injuries due to hotel's failure to eradicate bed bugs).  In short, "CUTPA . . . prohibits only certain particularly abusive commercial practices," *Richards*, 915 F.3d at 102, and the allegations against the Lawrence brothers and 32 Sports Inc. fall well short of that mark.

For all these reasons, the undersigned recommends that Count Two (a) be DISMISSED WITHOUT LEAVE TO AMEND as to Dustin Hibbert, Damon Hibbert, and Officer Collins, and (b) be DISMISSED with leave to amend as to 32 Sports Inc., Matt Lawrence, and James Lawrence.

### 3.  Count Three – Negligence

Count Three asserts two claims of negligence.  It alleges that the Lawrence brothers and 32 Sports Inc. breached a duty of care to provide a reasonably safe environment at the youth flag football event, and it alleges that Officer Collins interfered with plaintiff's records request.  ECF 1 at 22-23.

The negligence claim against the Lawrence brothers and 32 Sports Inc. is adequately pleaded. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Osborn v. City of Waterbury*, 333 Conn. 816, 825 (2019). Here, the Complaint plausibly alleges that those defendants were the organizers of the flag football event and had a duty to ensure a safe environment for participants, and their failure to implement standard safety protocols caused plaintiff to suffer physical injury and emotional distress.

However, the negligence claim against Officer Collins is not viable. Count Three alleges that he rebuffed plaintiff's request for body worn camera footage and an unredacted police report. ECF 1 at 17-19, 23. As noted above, the disclosure of law enforcement records is governed by the Freedom of Information Act, *see* Conn. Gen. Stat. § 1-215, and the Connecticut Supreme Court has held that § 1-206(b) provides "the exclusive remedy for the violation of a right conferred by the FOIA." *Pane v. City of Danbury*, 267 Conn. 669, 680 (2004), *overruled on other grounds by Grady v. Town of Somers*, 294 Conn. 324 (2009); *see also*, *e.g.*, *DiCesare v. Town of Stonington*, No. 15-cv-1703 (VAB), 2017 WL 1042056, at *4 (D. Conn. Mar. 17, 2017) (citing *Pane* and dismissing claim alleging that town employee violated FOIA). Plaintiff therefore cannot bring a civil claim for damages against Officer Collins for his alleged FOIA non-compliance.

Lastly, although the header of Count Three lists the Hibbert brothers as defendants, Count Three contains no allegations sounding in negligence against them. Nor do the allegations elsewhere in the Complaint raise a reasonable inference that they shared responsibility for implementing safety protocols for the event. As for their alleged physical attack on plaintiff, which underpins the assault and battery claim in Count One, it cannot form the basis of a

negligence claim for purposes of Count Three because such it is alleged to have been intentional, not negligent.

Accordingly, the undersigned recommends that Count Three (a) be permitted to proceed against Matt Lawrence, James Lawrence, and 32 Sports Inc., (b) be DISMISSED WITHOUT LEAVE TO AMEND as to Officer Collins, and (c) be DISMISSED with leave to amend as to Dustin Hibbert and Damon Hibbert.

### 4. Count Four – Defamation

Count Four asserts defamation against the Hibbert brothers. The elements of defamation are: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020). The statement must convey an objective fact; generally, a defendant cannot be held liable for expressing a mere opinion. *Id.*

The Complaint alleges that the Hibbert brothers falsely told bystanders and the police that plaintiff had a firearm and fired shots, which resulted in plaintiff's arrest and criminal prosecution. ECF 1 at 9-11, 23-24. Because the alleged defamatory statement accused the plaintiff of committing "a chargeable offense which is punishable by imprisonment," it is considered defamation *per se* such that reputational injury is presumed and the plaintiff "need neither plead nor prove it." *Schroder v. Columbia Volunteer Fire Dep't, Inc.*, No. 3:20-cv-1677 (OAW), 2024 WL 1374737, at *9 (D. Conn. Mar. 30, 2024) (quoting *Gleason v. Smolinski*, 319 Conn. 394, 431 n.31 (2015)). Nonetheless, because statements made to police in the course of a criminal investigation are subject to a qualified privilege in Connecticut, a plaintiff claiming that such a statement was defamatory must allege actual malice. *Gallo v. Barile*, 284 Conn. 459,

471-72 and n.6 (2007). "Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false. . . . [T]he evidence must demonstrate a purposeful avoidance of the truth." *Id.* at 464 n.6 (citation and quotation marks omitted). Malice in fact may be demonstrated by proof that the statement was made with "improper and unjustifiable motives." *Id.*

Here, plaintiff has adequately pleaded malice by plausibly alleging that the Hibbert brothers angrily attacked him after their flag football team twice lost to plaintiff's son's team, and then falsely told police he had a firearm in order "to cover up their assault on the plaintiff," ECF 1 at 10. The undersigned therefore concludes that plaintiff has alleged a plausible defamation claim and recommends that Count Four be permitted to proceed against the Hibbert brothers.

### 5. Count Five and Count Eleven – Malicious Prosecution

Count Five alleges malicious prosecution under 42 U.S.C. § 1983 and the Connecticut common law against Officer Collins and Officer Potter. Count Eleven is essentially duplicative of Count Five, so the undersigned has considered them together.

Malicious prosecution claims under § 1983 are "substantially the same" as under state law. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). In fact, the elements of a § 1983 malicious prosecution claim are the same as the state law claim, with the additional requirement that the plaintiff must prove a Fourth Amendment violation. *See Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009). The elements of malicious prosecution under the state common law are: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a

purpose other than that of bringing an offender to justice." *Lopes v. Farmer*, 286 Conn. 384, 389-90 (2008). Because of the favorable termination element, a Fourth Amendment claim brought under § 1983 for malicious prosecution does not accrue, and the statute of limitations does not begin to run, until the prosecution terminates in the plaintiff's favor. *See Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) (citing *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994)). A favorable termination occurs where a criminal prosecution ends without a conviction, *see Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022), or where an extant conviction or sentence is invalidated, *see Heck* at 486-87.

At present, plaintiff has not alleged a favorable termination and, in fact, the state court criminal docket indicates that the criminal proceedings are still awaiting disposition as of the date of this recommended ruling. *See State v. Clark*, K10K-CR24-0380156-S (last accessed June 12, 2025). The undersigned therefore recommends that the Count Five claims against Officer Collins and Officer Potter under both § 1983 and the Connecticut common law be DISMISSED WITHOUT PREJUDICE because they have not yet accrued.

### 6. Count Six – Abuse of Process

Count Six asserts abuse of process against Officers Collins and Potter. Generously construed, it alleges that after they arrested and prosecuted the Plaintiff for a firearms offense he did not commit, they "knowingly engaged in an improper use of legal procedures to justify their wrongful actions," including rebuffing his records requests. ECF 1 at 12-14, 17-19, 25-26.

To state an abuse of process claim under Connecticut state law, a plaintiff must allege that "the defendant used a judicial process for an improper purpose," *Larobina v. McDonald*, 274 Conn. 394, 407 (2005), i.e., "for something for which it was not designed," *Miles v. City of Hartford*, 445 Fed. App'x 379, 384 (2d Cir. 2011). The improper purpose must have been the

defendant's "primary reason" for engaging the judicial process, *id.*, and there is no abuse of process "when the [judicial] process is used for the purpose for which it is intended" even if there is "an *incidental* motive of spite or an ulterior purpose of benefit to the defendant," *Mozzochi v. Beck*, 204 Conn. 490, 494 (1987) (emphasis added); *see also Zak v. Robertson*, 249 F. Supp. 2d 203, 209 (D. Conn. 2003) (Hall, J.) ("An improper motive alone cannot support a claim for abuse of process [in criminal proceedings] unless the plaintiff demonstrates that the defendant intended to achieve some end result that is distinct from criminal punishment (i.e. fine and/or imprisonment)."). Accordingly, the plaintiff must "point to specific misconduct intended to cause specific injury outside of the normal contemplation of [the] litigation." *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 96 (2007) (citation and quotation marks omitted); *see*, *e.g.*, *Getachew v. L&S Investors, LLC*, No. 3:23-cv-1381 (JCH), 2024 WL 1492815, at *4 (D. Conn. Apr. 5, 2024) (permitting abuse of process claim to proceed alleging that defendants threatened to defame plaintiffs to the New York Post during state court litigation, then filed a gratuitous and incendiary affidavit with the court and encouraged the Post to publish it for the primary purpose of embarrassing plaintiffs and coercing them to withdraw the case).

As a threshold matter, the claim is premature. Similar to a malicious prosecution claim, an abuse of process claim may be dismissed as premature during the pendency of the underlying litigation for three policy reasons: the eventual outcome could impact the abuse of process claim, overlapping issues would result in duplicative effort, and such claims could chill vigorous advocacy in the underlying matter. *Larobina*, 274 Conn. at 403; *see also*, *e.g.*, *Sarner v. Caldwell-Boyd*, No. 3:21-cv-987 (JAM), 2022 WL 4132940, at *4 (D. Conn. Sept. 12, 2022) (dismissing abuse of process claim as premature due to overlapping issues with pending underlying litigation). Those concerns apply here. Plaintiff contends that the pending firearms

13

prosecution is baseless, which means that there are overlapping issues and the future outcome of the criminal prosecution is relevant to the claim. *See*, *e.g.*, *Pursuit Opportunity Fund I Master Ltd. v. Claridge Assocs., LLC*, 467 F. Supp. 3d 32, 37 (D. Conn. 2020) (dismissing as premature an abuse of process claim alleging that underlying litigation was baseless because outcome of that suit would bear directly on defendants' motives in bringing it).

Moreover, Count Six does not state a plausible abuse of process claim. The Complaint alleges that the police initially arrested and charged plaintiff after failing to adequately investigate false information provided by the Hibbert brothers, which amounts at most to a mistake rather than spite or some ulterior motive. The Complaint goes on to allege that, once the police realized their mistake, they doubled down on the prosecution to cover it up, including by denying plaintiff's records request. Even assuming that this could be sufficient to allege an improper purpose in a hypothetical case, the only specific conduct recited in the Complaint does not support that premise. The Complaint alleges that Officer Collins and other police personnel told plaintiff they could not directly give him body worn camera footage or unredacted copy of the police report, but that plaintiff could request the information through his attorney (presumably meaning his counsel in the criminal case) or via a court order. ECF 1 ¶¶ 143, 149-50. Those allegations do not raise a reasonable inference that the police were acting with an improper purpose. Rather, Officer Collins's alleged response to the records request appears to be a good faith reading of the FOIA provisions at Conn. Gen. Stat. § 1-215(b), which restricts disclosure of arrest records including incident reports, especially during a pending prosecution, and § 1-206, which provides appeal rights to an individual who believes records have been unlawfully withheld. In short, the Complaint lacks plausible allegations that the police

defendants' primary purpose for engaging the judicial process was to achieve some improper end result other than the resolution of the criminal charges.

For these reasons, the undersigned recommends that Count Six be DISMISSED without prejudice as premature with respect to Officer Collins and Officer Potter.

### 7.  Count Seven – Negligent hiring, training, and supervision

Count Seven alleges that the Groton Police Department failed to properly train and supervise Officers Collins and Potter (who are accused of false arrest and malicious prosecution), and that the Lawrence brothers and 32 Sports Inc. failed to exercise due diligence in hiring, training, and supervising their employee Dustin Hibbert (who is accused of assault and battery).

As noted above, the Groton Police Department is not an independent legal entity that has the capacity to sue or be sued under § 1983 or the common law, so the claim is not viable. *See McDonald v. Stamford Police Dep't*, No. 3:21-cv-723 (KAD), 2022 WL 1471249, at *3 (D. Conn. May 10, 2022).  The header also states that Count Seven is levied against Officers Collins and Potter; however, there are no allegations that they had authority to hire, train, or supervise, or that they somehow violated plaintiff's civil rights in the exercise of such authority. *Cf. Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[T]here is no special rule for supervisory liability [under § 1983].  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'").

Nor does Count Seven state a viable claim for negligent hiring, training, or supervision against the Lawrence brothers and 32 Sports Inc. concerning the alleged assault and defamation perpetrated at its flag football event by its employee, Dustin Hibbert.  Negligent hiring occurs when an "employer's own negligence in failing to select an employee fit or competent to perform the services of employment" caused an injury. *Karlen v. Uber Techs., Inc.*, No. 3:21-cv-

835 (VAB), 2023 WL 3570635, at *3-5 (D. Conn. May 19, 2023) (quoting *Brooks v. Sweeney*, 299 Conn. 196, 207 n.12 (2010). Negligent supervision occurs when the plaintiff "suffered an injury due to the employer's failure to supervise an employee whom the employer had a duty to supervise." *Id.* (cleaned up). "An employer, however, does not have a duty to protect a plaintiff from an employee's tortious acts, whether due to allegedly negligent hiring or supervision, 'unless the [employer] knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct.'" [4] *Karlen v. Uber Techs., Inc.*, No. 3:21-cv-835 (VAB), 2023 WL 3570635, at *3 (D. Conn. May 19, 2023) (quoting *Michalsky v. Moffly Pubs., Inc.*, No. FSTCV196042420S, 2020 WL 5537003, at *5 (Conn. Super. Ct. Aug. 13, 2020)). Here, the allegations do not support the reasonable inference that the Lawrence brothers and 32 Sports Inc. that Dustin Hibbert had a propensity for violent behavior and that the defendants knew or should have known that information. *See, e.g., Pittman v. Bombardier Recreational Prods., Inc.*, No. 3:22-cv-1115 (VAB), 2023 WL 4157345, at *9 (D. Conn. June 23, 2023) (dismissing negligent hiring and supervision claim that neither alleged that employee had propensity to engage in the injurious conduct nor that the employer had any warning of that); *Karlen*, 2023 WL 3570635, at *3-5 (dismissing negligent supervision claim that alleged inadequate background check but not what employer would have discovered).

---

[4] This formulation appears in numerous decisions of the Connecticut Superior Court and the District of Connecticut over the past 28 years addressing negligent hiring and supervision. *See, e.g., Robles v. Dean*, No. FBT-CV156048792, 2017 WL 951404, at *7 (Conn. Super. Ct. Jan. 18, 2017); *Deguzman v. Kramer*, No. 3:04-cv-2064 (JCH), 2005 WL 2030447, at *2 (D. Conn. Aug. 23, 2005); *See v. Bridgeport Roman Cath. Diocesan Corp.*, No. CV-930300948S, 1997 WL 466498, at *6 (Conn. Super. Ct. July 31, 1997). The underlying principle is that a defendant sued for negligence "is shielded from liability for the intentional misconduct of a third party outside the scope of the risk created by the defendant's conduct[.]" *Doe v. Saint Francis Hosp. & Med. Ctr.*, 309 Conn. 146, 177-78 (2013). Thus, to hold a defendant directly liable for the tortious or criminal act of a third person, a plaintiff must show that the injurious act was "foreseeable, and so within the scope of the created risk." *Id.*

The undersigned therefore recommends that the Count Seven (a) be DISMISSED WITHOUT LEAVE TO AMEND as to the Groton Police Department, and (b) be DISMISSED with leave to amend as to Officer Collins, Officer Potter, Matt Lawrence, James Lawrence, and 32 Sports Inc.

### 8.   Count Ten – False arrest/imprisonment

Next, because the analysis of Count Ten informs Counts Eight and Nine, the undersigned will take them out of sequence.  Count Ten alleges a viable false arrest/imprisonment[5] claim against Officer Collins and Officer Potter.  "To state a valid claim for false arrest . . . under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012).  "In Connecticut, a plaintiff who alleges a claim for . . . false arrest must show both an absence of probable cause and that the underlying charges terminated favorably to the plaintiff." *Mendes v. Cunningham*, No. 3:21-cv-1527 (JAM), 2022 WL 2104515, at *2 (D. Conn. June 10, 2022) (citing *Miles v. City of Hartford*, 445 F. App'x 379, 382-83 (2d Cir. 2011)).  Plaintiff has plausibly pleaded that probable cause for his arrest was lacking here, given his allegations that he was the victim of the attack and that the arresting officers did not adequately investigate the aggressor's false statement that plaintiff was carrying firearms when, in fact, there were no guns to be found.  *See* ECF 1 at 12-13, 30-31.  And although plaintiff is currently unable to plead the element of favorable termination because the state criminal proceedings are still pending, that is not grounds for dismissal because a false arrest claim accrues – and the statute of limitations begins to run – "at the time the claimant

---

[5] False arrest is a subspecies of false imprisonment.  *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).

becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007). Nonetheless, given that future developments in the criminal proceedings may ultimately affect the viability of the claim, "a stay of the § 1983 [claim] may be appropriate while the criminal action pends." *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015) (citing *Wallace* at 394).

The undersigned therefore recommends that Count Ten be STAYED as to Officer Collins and Officer Potter.

### 9.   Count Eight – Intentional infliction of emotional distress

Count Eight alleges intentional infliction of emotional distress ("IIED") against all defendants.  The elements of an IIED claim are that "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000) (citation and quotation marks omitted).  The conduct must be "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 267 (1991).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton* at 210-11 (quoting 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)).

The claim against Officer Collins and Officer Potter does not adequately allege either intent to inflict emotional distress or extreme and outrageous conduct.  With respect to the decision to investigate, arrest, and charge the plaintiff, the Complaint alleges that the police were

initially misinformed and then failed to adequately investigate before arresting plaintiff, which would constitute negligence, not intentionally injurious conduct. [6]  ECF 1 at 11-13.  As to the records request denied by Officer Collins, his alleged response amounts to a good faith interpretation of the requirements of the Freedom of Information Act, as discussed above, and therefore does not constitute extreme or outrageous conduct.  Furthermore, the Complaint also appears to allege that the decision not to drop charges against plaintiff after seeing video evidence – coupled with a decision to drop the charges against Dustin Hibbert – demonstrates that the police officers were acting intentionally to inflict emotional distress.  *See* ECF 1 ¶¶ 109, 136-139, 145, 207-208.  However, even assuming that the decision to maintain or drop charges was still within the officers' discretion at that juncture as opposed to the state's attorney, substantially more factual matter would be required to raise the reasonable inference that a decision not to withdraw pending criminal charges could constitute "atrocious and utterly intolerable" conduct.  *See*, *e.g.*, *Gojcaj v. City of Danbury*, No. 3:14-cv-1739 (MPS), 2016 WL 67688, at *9 (D. Conn. Jan. 5, 2016) (dismissing IIED claim where plaintiff alleged malicious efforts by police officer to turn prosecutors and jury against him; complaint failed to plausibly allege that officer's submissions were materially improper or that he was responsible for prosecutory decisions); *Cf. King v. Cablevision Sys. of S. Connecticut Ltd. P'ship*, No. CV-940135727S, 1998 WL 556162, at *6 (Conn. Super. Ct. Aug. 24, 1998) ("Inadequate probable cause to bring criminal charges does not and should not connote extreme and outrageous behavior.") (citing *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 547 (5th Cir. 1994)

---

[6] Although probable cause to arrest is a complete defense to an IIED claim, *see Siddiqui v. Rocheleau*, No. 3:18-cv-839 (JCH), 2019 WL 12239678, at *15 (D. Conn. May 15, 2019), the application of that defense is not obvious from the face of the Complaint, so dismissal on that basis is not presently appropriate.

(to permit IIED claim based on ordinary charging decisions would "suggest that all decisions not to prosecute would give rise to intentional tort claims")).  In sum, there is no plausible IIED claim alleged against Officers Collins and Potter.

As for the IIED claim against the Lawrence brothers and 32 Sports Inc., the allegations of inadequate safety measures and failure to intervene as Damon Hibbert became verbally aggressive towards staff and other participants in the event sound in negligence and, as such, are inadequate to state a claim of willful intent to inflict emotional distress.

However, the allegations against the Hibbert brothers – especially the false report to police that plaintiff was brandishing firearms at a youth sporting event – state a plausible claim for intentional infliction of emotional distress.  *See* ECF 1 at 11.  Although a report to the police typically does not constitute the type of extreme and outrageous conduct necessary to support an IIED claim, a false report concerning a particularly serious crime or made for a vindictive purpose is the sort of nontypical situation that may suffice to state an IIED claim.  *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 592 (D. Conn. 2023) (collecting cases).

Accordingly, the undersigned recommends that Count Eight (a) be permitted to proceed against Dustin Hibbert and Damon Hibbert, and (b) be DISMISSED with leave to amend as to Officer Collins, Officer Potter, Matt Lawrence, James Lawrence, and 32 Sports Inc.

### 10. Count Nine – Civil conspiracy to violate civil rights

Lastly, Count Nine asserts a claim of civil conspiracy to violate plaintiff's civil rights against Officers Collins and Potter, the Lawrence brothers, and 32 Sports Inc.  Although the Lawrence brothers, and 32 Sports Inc. are not state actors, private parties may be sued for civil conspiracy under § 1983 where the complaint alleges facts "demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act."  *Ciambriello v. Cnty. of*

*Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).  The elements of § 1983 civil conspiracy are: (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Id.* at 324-25.  A conspiracy claim under § 1983 "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  And because the objective of the agreement must be to violate the plaintiff's rights, it is necessary to "allege specific facts that show that the defendants shared a unity of purpose or a common design to injure the plaintiff, not mere conclusory allegations."  *Henning v. Town of New Milford*, No. 3:20-cv-1790 (VAB), 2021 WL 4940970, at *16 (D. Conn. Sept. 24, 2021).  The Second Circuit has emphasized that "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello* at 325.

As discussed above, the Complaint appears to state one plausible civil rights claim under § 1983, namely, false arrest in violation of plaintiff's Fourth Amendment rights.  However, apart from a conclusory recitation of the elements of civil conspiracy, the Complaint is lacking any "factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy."  *See Blue v. City of New York*, No. 16-cv-9990 (VSB), 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018) (citations and quotation marks omitted).  In fact, there is no allegation that the police officers and the Lawrence brothers had any contact whatsoever.

The undersigned therefore recommends that Count Nine be DISMISSED with leave to amend as to Officers Collins and Potter, the Lawrence brothers, and 32 Sports Inc.

### E.  CONCLUSION

For all the foregoing reasons, the undersigned recommends that all claims against the

Groton Police Department be DISMISSED WITHOUT LEAVE TO AMEND, and that the

remaining claims be dealt with as follows:

| Count One | Assault and battery | Hibbert brothers | Proceed |
|---|---|---|---|
| | | Lawrence brothers | Dismiss with leave to amend |
| | | 32 Sports Inc. | Dismiss with leave to amend |
| Count Two | Unfair trade practices | Lawrence brothers | Dismiss with leave to amend |
| | | 32 Sports Inc. | Dismiss with leave to amend |
| | | Hibbert brothers | Dismiss, no leave to amend |
| | | Officer Collins | Dismiss, no leave to amend |
| Count Three | Negligence | Lawrence brothers | Proceed |
| | | 32 Sports Inc. | Proceed |
| | | Hibbert brothers | Dismiss with leave to amend |
| | | Officer Collins | Dismiss, no leave to amend |
| Count Four | Defamation | Hibbert brothers | Proceed |
| Count Five/ Count Eleven | Malicious prosecution | Ofc. Collins & Potter | Dismiss w/o prejudice |
| Count Six | Abuse of process | Ofc. Collins & Potter | Dismiss w/o prejudice |
| Count Seven | Negligent hiring, training, supervision | Ofc. Collins & Potter | Dismiss with leave to amend |
| | | Lawrence brothers | Dismiss with leave to amend |
| | | 32 Sports Inc. | Dismiss with leave to amend |
| Count Eight | IIED | Hibbert brothers | Proceed |
| | | Ofc. Collins & Potter | Dismiss with leave to amend |
| | | Lawrence brothers | Dismiss with leave to amend |
| | | 32 Sports Inc. | Dismiss with leave to amend |
| Count Nine | § 1983 Conspiracy | Ofc. Collins & Potter | Dismiss with leave to amend |
| | | Lawrence brothers | Dismiss with leave to amend |
| | | 32 Sports Inc. | Dismiss with leave to amend |
| Count Ten | False arrest | Ofc. Collins & Potter | Stay |

This is a recommended ruling.  *See* Fed. R. Civ. P. 72(b)(1).  **Any objections to this**

**recommended ruling must be filed with the Clerk of the Court on or before June 30, 2025.**

See Fed. R. Civ. P. 72(b)(2) (objections to recommended ruling due fourteen days after being

served), and 6(d) (three days added where service is by mail). Failure to object by that date will

preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 and 6(a); D. Conn. L.

Civ. R. 72.2; *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam); *F.D.I.C. v.*

*Hillcrest Assoc.*, 66 F.3d 566, 569 (2d Cir. 1995).

      **SO ORDERED**, on this 12th day of June, 2025, at Bridgeport, Connecticut.


                                      */s/ S. Dave Vatti*
                                        Hon. S. Dave Vatti
                                        United States Magistrate Judge